# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:   )
         )   **JUDGE RICHARD L. SPEER**
Cindy Thurston   )
         )   Case No. 07-35092
   Debtor(s)   )
         )
         )

## DECISION AND ORDER

This cause comes before the Court after a Hearing on the Motion of the United States Trustee to Dismiss Case for Abuse pursuant to 11 U.S.C. § 707(b)(1) and 11 U.S.C. § 707(b)(3). At the conclusion of the Hearing, the Court took the matter under advisement so as to afford time to thoroughly consider the issues raised by the Parties. The Court has now had this opportunity, and finds, for the reasons set forth herein, that the Motion of the United States Trustee should be Denied.

## FACTS

On November 11, 2007, the Debtor, Cindy Thurston, filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. The Debtor set forth in her petition that her debts were primarily consumer debts. At the time of filing, the Debtor was in the process of obtaining a divorce. The divorce was finalized on February 14, 2008. According to the decree terminating her marriage, the Debtor was awarded custody of the couple's two children, ages eight and 10.

The Debtor's bankruptcy schedules reflect secured debt in the amount of $274,909.00. This debt consists mainly of three mortgages: (1) one mortgage encumbers the real property in which she now resides; (2) the other two mortgages are secured against a separate item of real property that was owned jointly with her former spouse. Under the terms of her decree of divorce, the Debtor is

**In re: Cindy A. Thurston**
**Case No. 07-35092**

required to assume the mortgage on her residence; her former husband is required to assume the two other mortgages.

In addition to this secured debt, the Debtor's bankruptcy schedules also reflect an unsecured debt burden of $183,818.95. This debt includes a student-loan obligation of $160,000.01, payment of which is required under the terms of the Debtor's divorce decree. The remainder of the Debtor's unsecured debt arises primarily from two credit-card accounts: $11,747.31 owed to Bank of America; and $11,471.63 owed to Discover Card. Regarding her student-loan obligation, the facts in this case show that the Debtor and her ex-husband both had student-loan debts when they entered into their marriage, and that these debts were consolidated by her husband at some point during the marriage without the Debtor's knowledge. Notwithstanding, the divorce decree set forth that the Debtor was required to assume responsibility for 60% of the parties' outstanding student-loans, or $160,000.01.

The Debtor is self-employed as a veterinarian for a nonprofit organization. According to her schedules, the Debtor has been employed in this position for 12 years. The Debtor's schedules indicate monthly earnings estimated at $6,000.00, amounting to an annual income of approximately $72,000.00. Against her income, the Debtor set forth $6,497.13 in necessary, monthly expenses leaving a monthly household deficit of $497.13. The Debtor's monthly expenses include: (1) an allocation of approximately $1,400.00 for local, state, and federal taxes; (2) a $779.46 mortgage payment (inclusive of taxes and insurance); (3) expenditures totaling around $2,000.00 for utilities, home maintenance, food, clothing and other necessities; (4) $600.00 in business expenses; (5) a $50.00 car payment; and (6) an anticipated student-loan payment in the amount of $1,000.00.

Page 2

**In re: Cindy A. Thurston**
**Case No. 07-35092**

## DISCUSSION

This matter is before the Court on the Motion of the United States Trustee (hereinafter "UST") to Dismiss. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

The Motion of the UST to Dismiss is brought pursuant to 11 U.S.C. § 707(b)(1) and 11 U.S.C. § 707(b)(3). These two provisions work together. First, § 707(b)(1) sets forth a foundation, allowing a court to dismiss a debtor's case when abuse is found to exist, by providing:

> (b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

Section 707(b)(3) then sets forth a methodology by which to assess the existence of abuse, providing:

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

Page 3

**In re: Cindy A. Thurston**
**Case No. 07-35092**

In citing to 707(b)(3) as a basis for dismissal, no allegations were made by the UST, either in its Motion or at the Hearing, of "bad faith" as set forth in subparagraph (A). Accordingly, it will be assumed that, in seeking to have the Debtor's case dismissed for abuse under § 707(b)(3), the UST is relying exclusively on subparagraph (B), the totality of the circumstances.

Although decided prior to the enactment of § 707(b)(3), it is recognized that a seminal case concerning whether the totality of the debtor's circumstances indicate abuse is the Sixth Circuit Court of Appeal's decision in *In re Behlke*, 358 F.3d 429 (6th Cir. 2004). In *In re Behlke*, the Court explained that abuse could be predicated upon want of need. *Id.* According to the Court, want of need is ascertained by considering whether the debtor is "'needy' in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets." *Id.* at 435.

In assessing the totality of the debtor's financial circumstances to determine want of need, a prime consideration will often center on the debtor's ability to repay his or her creditors. *In re Krohn*, 886 F.2d 123, 126-127 (6th Cir. 1989). A frequently utilized measure, when determining if a debtor has the ability to repay their debts, is to ascertain whether, under a hypothetical Chapter 13 repayment plan, the debtor could repay a meaningful percentage of his or her debts. *In re Behlke*, 358 F.3d at 434-435; *In re Glenn*, 345 B.R. 831, 836 (Bankr. N.D.Ohio 2006). In turn, this determination is primarily contingent upon the amount of "disposable income" the debtor has available to pay into the plan. The term "disposable income" is defined as that income received by a debtor which is not reasonably necessary to be expended for the maintenance and support of the debtor and his or her dependents. 11 U.S.C. § 1325(b)(2); *In re Pier*, 310 B.R. 347, 353 (Bankr. N.D.Ohio 2004).

Looking only at the financial information provided by the Debtor, the Court would agree that her ability to repay her creditors is severely constrained, if not completely lacking. According to her budgetary figures, the Debtor's monthly "disposable income" is already below zero, showing a

Page 4

07-35092-rls    Doc 29    FILED 08/08/08    ENTERED 08/08/08 14:49:34    Page 4 of 12

In re: Cindy A. Thurston
Case No. 07-35092

monthly deficiency of $497.13. (Doc. No. 1). Therefore, by the Debtor's calculation she has no 'disposable income' available to fund a Chapter 13 repayment plan.

Yet, it is established that whether a debtor has the ability to repay their debts is a factual question for the Court to resolve, and is hence not dependent on the financial figures provided by a debtor. *In re Gonzalez*, 378 B.R. 168, 173 (Bankr. N.D.Ohio 2007). Rather, "in its role as the trier-of-fact, the Court is under a duty to scrutinize a debtor's expenses, and make downward adjustments where necessary, so as to ensure that the debtor's expenses are reasonable. *Id.; see also Freeman v. Schulman* (*In re Freeman*), 86 F.3d 478, 481 (6th Cir. 1996). Similarly, when determining a debtor's 'disposable income,' a court may impute income to the debtor when it would be equitable to do so - *e.g.*, when the debtor is voluntarily underemployed. *In re Felske*, 385 B.R. 649, 655 (Bankr. N.D.Ohio 2008).

Based on the Court's authority to equitably adjust the Debtor's budgetary figures, the UST argued, in its Motion and at the Hearing, that the Debtor should not be allowed to expense against her income an expected student-loan payment of approximately $1,000.00 per month. Once this adjustment is made, the UST set forth that the "Debtor has over $500 a month to pay all unsecured creditors. Therefore, it would be an abuse for the Debtor to receive a discharge." (Doc. No. 14).

Equality of distribution among creditors is a central policy of the Bankruptcy Code. Functionally, this policy means that creditors of equal priority should receive pro rata shares of the debtor's estate property. *Begier v. IRS*, 496 U.S. 53, 58, 110 S.Ct. 2258, 2262-63, 110 L.Ed.2d 46 (1990). The UST's argument conforms to this central policy. A student-loan obligation, although being a nondischargeable debt, is not accorded any favorable treatment in the Bankruptcy Code's priority scheme. *See* 11 U.S.C. 507 (listing priority debts).

Page 5

**In re: Cindy A. Thurston**
**Case No. 07-35092**

Applying this fundament of bankruptcy law, that equally situated creditors are entitled to equal treatment, this Court has generally not permitted a debtor, as applied to § 707(b)(3)(B), to allocate their financial resources to pay a student-loan obligation, while not doing the same for their other similarly situated creditors. *See In re Kaminsky*, 387 B.R. 190, 197 (Bankr. N.D.Ohio 2008). In this same vein, this Court has found abuse to exist under § 707(b)(3)(B) when a debtor seeks to repay, at the expense of other creditors, loans taken against retirement accounts. *In re Gonzalez*, 378 B.R. 168 (Bankr. N.D.Ohio 2008) *See also In re Glenn*, 345 B.R. 831, 837 (Bankr.N.D.Ohio 2006) (a debtor may not expense voluntary contributions to retirement plans).

Based on this prior precedent, the Debtor, while recognizing that student-loan obligations are generally not entitled to preferential treatment, argued that for purposes of the totality of the circumstances standard of § 707(b)(3)(B) her situation is unique, warranting a deviation from this Court's general practice of not permitting such debts to be afforded special treatment. The Debtor's reason for this is simple: if she were to seek Chapter 13 relief, the benefit accorded to her general body of unsecured creditors would be minimal, while her financial situation vis-a-vis her student-loan would further deteriorate. In support of this position, the Debtor made the following points.

First, the Debtor calculated that, based upon her present budgetary deficit of $497.13, reallocating her $1,000.00 student-loan expense across all of her unsecured creditors would yield $450.00 per month to fund a Chapter 13 plan after accounting for administrative fees. Second, based upon the size of her unsecured debts, $183,818.95, the Debtor calculated that devoting $450.00 per month to repay her unsecured creditors would yield just a 14% dividend, with her two credit-card debts (which are nearly identical in amount) each receiving around $1,700.00, while her student-loan obligation would receive $23,000.00. Third, the Debtor explained that, given the large size of her student-loan obligation, $160,000.01, the $23,000.00 remuneration to this obligation would not be sufficient to cover interest and other charges which, over the life of a Chapter 13 plan, would continue to accrue given the obligation's character as a nondischargeable debt. As such, the Debtor

Page 6

**In re: Cindy A. Thurston**
**Case No. 07-35092**

explained that, if she were to pursue a Chapter 13 plan of reorganization, the principal on her student loan would increase over the life of the plan.

Furthermore, the Debtor pointed out that the above distributions may be overtly optimistic. Since submitting her budgetary figures to the Court, the Debtor explained at the Hearing that her expenses have increased, and hence her disposable income would no longer be $450.00 per month. Specifically, the Debtor explained that her business expenses have grown by at least $100.00 per month due to increased transportation costs. Also, the Debtor stated that the monthly expense for her vehicle would soon exceed $50.00 per month, as she is currently driving an extremely old, high-mileage vehicle.

At the Hearing held on this matter, the UST did not seek to contradict the above factual assertions put forth by the Debtor. Instead, the UST simply stood on its position that the Debtor should be required to submit her estimated $1,000.00 per month student-loan payment for the benefit of all her unsecured creditors. The Court, however, after giving the matter serious consideration, declines to adopt this position.

First, as a legal matter, the position advocated by the UST seems to imply that, when assessing a motion to dismiss under § 707(b)(3)(B), a debtor may never accord a student-loan obligation favorable treatment. To the extent that this is the position of the UST, however, it goes contrary to the explicit language of § 707(b)(3)(B). The test set forth in § 707(b)(3)(B) requires a court to consider the *totality* of the debtor's financial circumstances. Totality is defined as "[a]n aggregate amount." *Webster's II New Riverside University Dictionary* 1220 (1988). Thus, by definition, a totality approach requires that a court eschew a strict mechanical approach, whereby payments on certain types of debts are automatically excluded from an 'ability to pay' calculation, and instead considers all relevant factors. *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 393 (Bankr. W.D.Pa. 2008).

Page 7

**In re: Cindy A. Thurston**
**Case No. 07-35092**

Consistent therewith, this Court has in the past recognized that, while subject to certain guiding principles, a totality of the circumstances inquiry under § 707(b)(3)(B) is not conducive to absolutes. *In re Gonzalez*, 378 B.R. 168 (Bankr. N.D.Ohio 2008). This type of flexible approach is also consistent with decisions from other courts which have afforded § 707(b)(3)(B) a case-by-case approach. *See, e.g.*, *In re Beckerman*, 381 B.R. 841, 848-49 (Bankr. E.D.Mich. 2008) (adopting a case-by-case approach under § 707(b)(3)(B) when determining the permissibility of retirement contributions); *In re Tucker*, 389 B.R. 535, 540 (Bankr. N.D.Ohio 2008) (J. Whipple) (voluntary contributions and/or loan repayments to retirement accounts may be reasonably necessary expenses in a § 707(b)(3)(B) analysis).

As a result, when presented with a § 707(b)(3)(B) motion to dismiss, the Court is not absolutely beholden to the policy of equality of treatment among all creditors. Rather, other foundational policies upon which bankruptcy law is based may be implicated in a § 707(b)(3)(B) analysis. The Debtor's position, that her student loan would continue to incur interest and other fees, takes up this cudgel by espousing that her ability to obtain a fresh start in bankruptcy would be severely constrained if she were not permitted to proceed under Chapter 7 of the Bankruptcy Code.

It has been long-stated that a central function of bankruptcy law is to afford a debtor a fresh start. *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). At the same time, this policy may, and often is subordinated to other policy concerns. *White v. Kentuckiana Livestock Market, Inc.*, 397 F.3d 420, 426 (6th Cir. 2005). For example, as a matter of statute, Congress has determined that certain types of debts are not subject to the fresh start. *See* 11 U.S.C. § 523(a) (listing nondischargeable debts). Similarly, as a statutory matter, certain types of acts may bar a debtor from even receiving a discharge. *See* 11 U.S.C. § 727(a) (setting grounds for denial of discharge). Section 707(b) continues along this same line. In enacting § 707(b), Congress made a policy determination that certain debtors – for example, those with the ability to repay their debts or those debtors who filed their petition in bad faith – should not be afforded the benefits of an

Page 8

**In re: Cindy A. Thurston**
**Case No. 07-35092**

immediate fresh start, but instead should have their fresh start conditioned on the repayment of a certain percentage of their debts.

At the same time, while § 707(b) subordinates a debtor's fresh start to other policy considerations, the Court is reluctant to apply the statute so as to render a debtor's fresh start meaningless. This is a real concern for the Court in this case. Based on those points made by the Debtor, if her fresh start in bankruptcy were conditioned on her seeking Chapter 13 relief, as opposed to Chapter 7 relief, her debt burden could actually increase over the life of a Chapter 13 plan.

In this regard, it is well established that student-loan obligations, being nondischargeable in character, may continue to accrue interest and other fees during the course of a debtor's Chapter 13 repayment plan. *In re Williams*, 253 B.R. 220, 225 (Bankr. W.D.Tenn.2000). While such postpetition charges do not have to be paid during the course of the bankruptcy, the charges remain a liability for the debtor once the case is concluded. *Bruning v. United States*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964) (post petition interest on nondischargeable tax debt remained, after bankruptcy proceeding, a personal liability of debtor). A large student-loan debt, therefore, such as that owed by the Debtor, can be expected to incur significant interest and other charges over the life of a Chapter 13 plan which would then have to be paid by the debtor once the plan is completed.

This is not to say that a debtor, when faced with the prospect of an arrearage accruing on their student-loan obligation under a Chapter 13 plan, should be immune from the reach of § 707(b)(B)(3). To the contrary, where a debtor's disposable income allows for meaningful remuneration to all unsecured creditors, the bankruptcy policy of affording creditors equal treatment would again come to the forefront. *See In re Sullivan*, 195 B.R. 649, 654 (Bankr.W.D.Tex.1996) (a debtor cannot expect an unfettered fresh start when one of the debtor's debts is nondischargeable). But here the benefit to her other unsecured creditors is minimal.

Page 9

**In re: Cindy A. Thurston**
**Case No. 07-35092**

At most, the Debtor's other creditors will only receive a 14% distribution on their claims. The practicable effect of this is that to deny the Debtor Chapter 7 relief comes at a great cost, with very little commensurate benefit. If the Debtor were to proceed under a Chapter 13, she would be required to pay more than $20,000.00 to her student-loan creditor, an amount which would still see an increase on the obligation's principal. Yet, in exchange, the Debtor's two remaining unsecured creditors of significance would realize only $1,700.00 on their claims, with the total value of each claim approaching $12,000.00.

Under these circumstances, the Court, based upon a totality of the circumstances analysis under § 707(b)(3)(B), finds that it is proper for the Debtor to expense her anticipated student-loan payment of $1,000.00 against her disposable income for purposes of determining her ability to pay. When this is done, the Debtor's budget cannot be read so as to afford her any realistic means by which to formulate a repayment plan. First, on the income side of the equation, no evidence was offered that the Debtor has not attempted to maximize her income. Similarly, with regards to expenses, the Debtor's budgetary figures do not appear extravagant or excessive. A few points here are worth mentioning.

First, allocating $780.00 per month for housing for herself and her two dependents does not strike this Court as abnormal. Similarly, the Debtor's monthly expenditure of around $2,000.00 for utilities, home maintenance, food, clothing and other necessities does not appear to the Court to be excessive. The Debtor also appears to have made attempts to minimize her budgetary expense. Of note, the Debtor presently allocates only $50.00 dollars per month for an automobile payment, a 1994 Honda with 330,000 miles. While not strictly applicable to a 707(b)(3) analysis, the Court recognizes that this is well below the ownership cost of $471.00 per month as applicable to the means test of § 707(b)(2)[1].

---

[1] http://www.usdoj.gov/ust/eo/bapcpa/20071015/bci_data/IRS_Trans_Exp_Stds_MW.htm.

Page 10

In re: Cindy A. Thurston
Case No. 07-35092

For all these reasons, the Court does not find the Motion of the UST, as brought pursuant to 11 U.S.C. § 707(b)(1) and 11 U.S.C. § 707(b)(3), to be well taken. As such, the Debtor will be permitted to maintain her Chapter 7 bankruptcy. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Motion of the United States Trustee to Dismiss pursuant to 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, DENIED.

Dated: August 8, 2008

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 11

# CERTIFICATE OF SERVICE

Copies were mailed this 8th day of August 2008 to:

Ericka S Parker
33 S. Michigan
Suite 203
Toledo, OH 43604

Cindy A. Thurston
105 Kline Ave
Liberty Center, OH 43532

Gordon R Barry
930 Spitzer Bldg
Toledo, OH 43604

United States Trustee, Region 9
201 Superior Ave 4th Floor, Suite 441
Cleveland, OH 44114

Maria D. Giannirakis
201 Superior Ave 4th Floor, Suite 441
Cleveland, OH 44114

/s/Jennifer S Huff
Deputy Clerk, U.S. Bankruptcy Court